| | |
|---|---|
| 1 | CHARLES TONY PICCUTA (SBN 258333) |
| | HOUSER & ALLISON |
| 2 | A Professional Corp. |
| | 9970 Research Drive |
| 3 | Irvine, CA 92618 |
| | Ph: (949) 679-1111 |
| 4 | Fax: (949) 679-1112 |
| 5 | Attorney for Movant, BAYVIEW LOAN SERVICING, LLC |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.: 12-32562-DM-11 |
| | ) | |
| ORLANDO TOLBERT and KIM TOLBERT, | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | **BAYVIEW'S MOTION TO PROHIBIT THE UNAUTHORIZED USE OF CASH COLLATERAL AND REQUEST FOR AN ORDER DIRECTING DEBTOR TO SEQUESTER AND ACCOUNT FOR BAYVIEW'S CASH COLLATERAL AND RETURN MISAPPOPRIATED FUNDS; DECLARATION OF JOHN STAMM IN SUPPORT THEREOF** |
| BAYVIEW LOAN SERVICING, LLC, | ) | |
| Movant, | ) | |
| vs. | ) | |
| ORLANDO TOLBERT and KIM TOLBERT, Debtors; | ) | **HEARING DATE:** |
| | ) | DATE:   April 5, 2013 |
| Respondents | ) | TIME:   10:00 a.m. |
| | ) | CTRM:   22 |

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, DEBTORS, THE U.S. TRUSTEE AND OTHER INTERESTED PARTIES:**

Bayview Loan Servicing, LLC ("Bayview"), hereby moves this Court for an order pursuant to 11 U.S.C § 363: (i) prohibiting Debtors Kim and Orlando Tolbert ("Debtors"), from using Bayview's cash collateral (as that term is defined in 11 U.S.C. §363); (ii) directing Debtors' to sequester and account for Bayview's cash collateral; and (iii) requiring Debtors to return to Bayview any misappropriated cash collateral. In the alternative, Bayview requests that the Court issue an Order declaring that Debtors are prohibited from using any rents or proceeds from the property securing Bayview's lien interest, and located at 3789 Gershon Court, Las Vegas, Nevada 89121 ("property"), to fund Debtors' Chapter 11 Plan.

This Motion is necessary because, since the filing of this case on September 3, 2012, Debtors have used rents and proceeds generated from the property. These rents and proceeds should be categorized as Bayview's cash collateral. As such, Debtors have used Bayview's cash collateral without consent from Bayview and without permission from the Court as required by the Bankruptcy Code. To date, Debtors have not obtained a stipulation from Bayview allowing Debtors to use Bayview's cash collateral and Debtors have failed to adequately segregate and account for all of Bayview's cash collateral as required by 11 U.S.C. §363(c)(4). Moreover, Debtors have misappropriated Bayview's cash collateral for their own improper purposes.

DATED: March 7, 2013

HOUSER & ALLISON,
A Professional Corporation

By: /s/ Charles Tony Piccuta
CHARLES TONY PICCUTA
Attorneys for BAYVIEW LOAN SERVICING, LLC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Secured Creditor, Bayview Loan Servicing, LLC ("Bayview"), seeks an order pursuant to 11 U.S.C. §§ 105 and 363 (i) prohibiting the Debtors and Debtors in Possession, Kim and Orlando Tolbert ("Debtors"), from using Bayview's cash collateral; (ii) directing Debtor to sequester and account for Bayview's cash collateral; and (iii) ordering Debtor to return any misappropriated cash collateral. In the alternative, Bayview requests that the Court issue an Order declaring that Debtors are prohibited from using any rents or proceeds from the property that secured Bayview's lien interest, and located at 3789 Gershon Court, Las Vegas, Nevada 89121, to fund Debtors' Chapter 11 Plan.

This matter is a multiple asset Chapter 11 Bankruptcy wherein Bayview is the first position secured lien holder with respect to a property located at 3789 Gershon Court, Las Vegas, Nevada 89121. At the time the Debtors executed the Note and Deed of Trust they executed a Second Home Rider wherein they contractually agreed to only use the home as a second home for their exclusive use. However, Debtors use the property as a rental property in breach of this agreement and currently receive rental proceeds from the property. Upon information and belief, Debtors always used the property as a rental investment property and never intended to occupy the property.

This Motion is necessary because, since the filing of this case in September of 2012, Debtors have received rents from the property in violation of their contractual agreement and have not made any payments to Bayview from the rental proceeds they received. Since the Debtors were prohibited from renting the property, no assignment of rents provision exists in the Deed of Trust. Since Debtors now rent the property in violation of their agreement not to do so, the Court should treat the income received as Bayview's cash collateral and issue an order categorizing the rental income received as cash collateral.

As such, the Debtor has failed to obtain a stipulation to use Bayview's cash collateral, has failed to move the Court for an Order approving the use of cash collateral, and has failed to segregate and account for all of Bayview's cash collateral as required by 11 U.S.C. §363(c)(4).

Further, it is evident from the Debtors' Operating Statements that they are using Bayview's cash collateral for improper purposes and for purposes unrelated to managing and maintaining the property. An Order granting the relief requested should be issued forthwith.

## II. STATEMENT OF RELEVANT FACTS

Bayview holds a first position secured lien interest in the property located at 3789 Gershon Court, Las Vegas, Nevada 89121. (*See* Garcia Declaration at ¶ 4). On or about April 11, 2006, Kim Tolbert executed a Promissory Note in the original principal sum of $999,999.00 and in favor of originating lender First Horizon Home Loan Corporation ("First Horizon"). (*See* "Note"*,* **Ex. 1** and Garcia Dec. at ¶ 4). The Note is secured by a first position Deed of Trust recorded against the property. (*See* "Deed of Trust", **Ex. 2** and Garcia Dec. at ¶ 4). The Deed of Trust was executed by Kim Tolbert on April 11, 2006 and recorded on April 19, 2006 in the Clark County Recorder's Office. (See *Id.* and Garcia Dec.). The Deed of Trust included a "Second Home Rider" which was also executed by Kim Tolbert on April 11, 2006 and recorded with the Deed of Trust on April 19, 2006. (*See* "Second Home Rider" attached collectively with Deed of Trust).

The Second Home Rider provided the following provisions which replaced paragraphs six and eight of the Deed of Trust:

> **6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower ***shall keep the Property available for Borrower's exclusive use and enjoyment at all times***, and shall not subject the Property to any timesharing or other shared ownership arrangement of to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person control over the occupancy of use of the Property.
>
> **8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process,  Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. ***Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower' second home.***

Thus, Kim Tolbert was contractually obligated to use the property as a second home for her "exclusive use and enjoyment at all times" and forbidden from renting the property or enrolling

the property in a time-share arrangement. (*See* Second Home Rider).

On or about September 29, 2011, First Horizon assigned the beneficial interest in the Note and Deed of Trust to Bayview Loan Servicing, LLC ("Movant"). (*See* "Assignment", **Ex. 3** and Garcia Dec. at ¶ 4). The Deed of Trust did not include a traditional assignment of rents provision, granting Bayview a security interest in the rents and proceeds from the property, because Kim Tolbert was contractually forbidden from renting the property. (*See* Second Home Rider).

The Debtor has failed to make any post-petition payments to Bayview. As of February 1, 2013, the Debtor owed Bayview five post petition payments totaling $27,736.02. (*See* Garcia Dec. at ¶ 5). Debtors receive rental income from the property. (*See* October Monthly Operating Report ("MOR") (Dckt. # 39) attached to the Declaration of John Stamm as **Ex. 4** and Amended Rental Real Property Income and Expenses (Dckt. # 27) attached to the Declaration of John Stamm as **Ex. 5**). The Debtors' Amended Real Property Income and Expenses report sets forth that the property generates $2,000 per month in rental income. (*See Id.*). This Report also shows monthly expenses for the property totaling $1,740.00. (*See Id.*). This includes a mortgage payment expense to Bayview of $806.00, property tax payments of $336.00, insurance expense of $118.00, HOA dues of $80.00 and an expense of $400.00 for maintenance and utilities. (*See Id.*).

However, the Debtors' October MOR shows that the property generated $6,525.04 in rental deposits during October and that no payments were made to Bayview or toward the property taxes, insurance and HOA expenses. (*See* MOR). Instead, the MOR shows that the borrower allegedly paid utilities and maintenance totaling $995.33 and that the Debtors withdrew $1,200.00 in cash for unknown purposes and another $345.19 was spent for "other" expenses. (*See* MOR). It also appears that the Debtors are not properly segregating funds. The Debtors indicate that the Wells Fargo checking account ending 0268 is for 3789 Gershon Court. (*See* MOR). However, there are deposits to that account from Tolbert and Tolbert, LTD (US Bank account ending 3509) in the amounts of $3,950.00 and $1,050.00. (*See* MOR).

///

## III. LAW AND ARGUMENT

A "trustee may not use … cash collateral … unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use … in accordance with the provisions of this section." 11 U.S.C. §363(c)(2). As discussed above, Bayview has not consented to the Debtor's use of cash collateral, and Debtor has failed to obtain and Order from this Court authorizing it to do so. Under § 363(e), the Court is obligated to prohibit or condition the use of cash collateral as is necessary to provide adequate protection of Bayview's interest in its cash collateral. In addition, in the absence of the creditor's consent or an order of the Court authorizing the use of cash collateral, § 363(c)(4) requires the Debtor to "segregate and account for any cash collateral in the trustee's possession, custody, or control."

Had Movant anticipated the Debtors would use the property as a rental, then an assignment of rents provision would have undoubtedly been included in the Deed of Trust. In the instant matter, no such provision exists as Kim Tolbert agreed that by no means would the property serve as a rental, but instead would be exclusively used as a second home for Kim Tolbert's exclusive use and enjoyment. Instead, Kim Tolbert has rented the property and purportedly receives $2,000.00 per month income of which none of those monies are paid to Movant.

Under the circumstances, equity demands that the Court categorize the rental income received from the property as Bayview's cash collateral. The Court should require that Debtors take all the necessary steps with respect to the cash collateral as required under the Bankruptcy Code. Specifically, the Debtors should be enjoined from their continued unauthorized use of the cash collateral and ordered to account for the same and segregate any cash collateral received. Finally, the Debtors should be ordered to return any cash collateral received or misappropriated to Bayview to be applied to the Debtor's post petition arrearages, HOA dues, property taxes and insurance premiums. In the alternative and if the Court does not treat the rental income and proceeds from the property as cash collateral, then the Court should find that the use of the property as a rental is prohibited under the Deed of Trust and that rental proceeds from the property may not be used to funds Debtors' Chapter 11 Plan.

## IV. CONCLUSION

WHEREFORE Bayview respectfully requests that the Court grant its Motion and relief requested therein.

DATED: March 7, 2013

HOUSER & ALLISON,
A Professional Corporation

By: /s/ Charles Tony Piccuta
ERIC D. HOUSER
Attorneys for BAYVIEW LOAN SERVICING, LLC